**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

DARRELL WIMBERLY, *a/k/a Darrel Wimberly*,

                        Petitioner,

          - v -                                Civ. No. 9:14-CV-1587
                                                   (LEK/DJS)

WILLIAMS, *Superintendent*,

                        Respondent.

---

**APPEARANCES:**                                    **OF COUNSEL:**

DARRELL WIMBERLY
Petitioner, *Pro Se*
10-A-1394
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

HON. ERIC T. SCHNEIDERMAN          JOANNA R. HERSHEY, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Respondent
120 Broadway
New York, NY 10271

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Petitioner Darrell Wimberly seeks a Writ of *Habeas Corpus*, pursuant to 28 U.S.C. § 2254, challenging a 2010 conviction, in Albany County Court, of Second Degree Robbery and Third Degree Criminal Possession of a Weapon. Dkt. No. 1, Pet. The Petition raises the following grounds: (1) he was denied his rights to a preliminary hearing and to testify before the grand jury; (2) the charges in the indictment were "overblown" because there was no legally sufficient evidence before the grand jury to support the crimes charged; (3) his counsel was ineffective for failing to

protect his rights to a preliminary hearing, to testify before the grand jury, and for failing to limit the charges brought by the grand jury; and (4) the evidence at trial was legally insufficient to support his conviction. *Id.* For the reasons that follow, the Court recommends that the Petition be **denied and dismissed** as untimely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

## I. BACKGROUND

### A. Petitioner's Conviction in Albany County Court

On September 9, 2009, Petitioner was indicted by a grand jury on one count of Robbery in the Second Degree, in violation of § 160.10(2)(b) of the New York Penal Law, and one count of Criminal Possession of a Weapon in the Third Degree, in violation of § 265.02(1) of the New York Penal Law. Dkt. No. 12-2, State Court Records, Part 1, at pp. SR 77-78. The indictment alleged that on September 4, 2009, at approximately 2:00 p.m., Petitioner entered a Marshalls, located in Bethlehem, New York, and "forcibly stole property . . . consisting of clothing by means of the threatened immediate use of physical force, when he pointed what appeared to be a pistol at a store employee in the course of immediate flight from the store with no permission or authorization to do so." *Id.*

Petitioner's counsel filed an omnibus pretrial motion, which sought to dismiss the indictment under New York Criminal Procedure Law ("CPL") § 210.20(1)(b) and (c) on the ground that the evidence before the grand jury was insufficient to support the offenses charged and that the grand jury proceeding was defective. *Id.* at pp. SR 83-86. The motion also requested (1) a

*Huntley*[1] hearing to suppress statements, (2) a *Sandoval-Ventimiglia*[2] hearing regarding prior bad acts, and (3) orders directing the Prosecution to respond to discovery demands, provide a bill of particulars, and provide *Brady* material. *Id.* The trial court denied Petitioner's motion to dismiss the indictment on October 29, 2009. *Id.* at pp. SR 98-100. The trial court also determined that the prosecution had already responded to Petitioner's discovery demands and bill of particulars, and ordered the prosecution to turn over all *Brady* material. *Id.* The trial court further held that *Huntley*, *Dunaway*,[3] and *Sandoval-Ventimiglia* hearings would be held prior to the trial. *Id.* at p. SR 100.

The suppression and *Sandoval* hearing was held on November 9, 2009. Dkt. No. 12-6, Tr. (Nov. 9, 2009).[4] The trial court heard testimony from James Cross, a police officer with the Bethlehem Police Department, who arrested Petitioner on the date of September 4, 2009. *Id.* at pp. 2-11. Based on Officer Cross's testimony, the trial court determined that there had been probable cause to arrest Petitioner and that statements that he made while in custody were made voluntarily. *Id.* at pp. 26-27. The trial court also made a ruling as to which of Petitioner's prior offenses could be inquired into during trial. *Id.* at pp. 46-48. On November 12, 2009, a final pre-trial proceeding was held, at which the prosecution amended the first count of the indictment to strike the words "when he pointed" and to instead include "when he displayed." Tr. (Nov. 12, 2009) at p. 3.

---

[1] *See People v. Huntley*, 15 N.Y.2d 72 (1965) (adopting procedure for providing separate hearing on whether a confession to be offered in evidence against a defendant is voluntary).

[2] *See People v. Sandoval*, 34 N.Y.2d 371 (1974). A *Sandoval* hearing is "an evidentiary hearing held to determine whether, if the defendant testifies, his prior convictions may be admitted to impeach his credibility." *Shannon v. Senkowski*, 2000 WL 1683448, at *6 (S.D.N.Y. Nov. 9, 2000).

[3] *See Dunaway v. New York*, 442 U.S. 200, 214-15 (1979) (holding that seizures of suspects are reasonable only if supported by probable cause).

[4] Respondent filed the transcript of several proceedings that were held before the trial court at Docket Number 12-6. The Court will cite to the assigned pagination for each proceeding.

The jury trial commenced on November 16, 2009. Tr. (Nov. 16, 2009). The prosecution called Addison Montoya, who worked as a loss prevention officer at the Marshalls in Bethlehem, New York, as the first witness. *Id.* at p. 122. Montoya testified that, on September 4, 2009, at approximately 2:00 p.m., he was monitoring the store's security cameras, when he witnessed two males, one of whom was Petitioner, enter the store. *Id.* at pp. 123-24. Montoya was alerted to the individuals because he observed that Petitioner had his tube socks rolled up over the bottom of his sweatpants; Montoya stated that shoplifters will often do this in order to conceal merchandise in their pants. *Id.* at p. 127. Montoya monitored the two individuals through the security system, and watched them separate, and saw Petitioner enter the store's men's department. *Id.* at pp. 125-26. Montoya observed Petitioner take four pairs of socks and conceal them down the front of his pants. *Id.* at p. 124. Petitioner then exited the store and Montoya pursued him to the sidewalk in front of the store. *Id.* at p. 128. When Montoya told Petitioner to stop because he had been observed shoplifting, Petitioner lifted his shirt, displaying a gun that was in his waistband. *Id.* at pp. 128-29. Petitioner then allegedly pulled the gun, which was a silver pistol with a black handle, from his waistband and stated, "Stop me for what? Stop me for what?" *Id.* at p. 129. Petitioner did not point the gun at Montoya but held it at an angle towards the ground. *Id.* at pp. 124 & 153. Montoya immediately put his hands up and backed away and Petitioner continued to walk away from the store. *Id.* Montoya then contacted the Bethlehem Police Department on his cell phone and pursued Petitioner in order to relay the direction he was walking in and a description of his physical appearance. *Id.* at pp. 124 & 130. Petitioner ran through the Marshalls' parking lot and a McDonald's parking lot, and into a Mobil gas station parking lot, where, Montoya stated, he attempted "to force his way into three other cars." *Id.* at p. 124.

The prosecution next called Officer Cross as a witness. *Id.* at p. 155. Officer Cross stated that he responded to a dispatch of a robbery at Marshalls at approximately 2:20 p.m. *Id.* at p. 157. As Officer Cross arrived at the Mobil station he saw a man matching the description given of Petitioner talking to someone in a car behind the station. *Id.* at p. 158. Petitioner then moved towards the front of the station. *Id.* at pp. 158-59. Officer Cross approached Petitioner with his weapon drawn and ordered him to put his hands in the air. *Id.* at p. 160. Petitioner did not follow Officer Cross's commands and kept asking why he was being stopped. *Id.* Petitioner lifted his shirt and pulled a black and silver gun from his waistband and threw it onto the ground in front of him. *Id.* Officer Cross stated that the gun looked like a "semi-automatic hand gun." *Id.* Officer Cross continued to command Petitioner to show his hands and to get on the ground, but Petitioner ignored the commands. *Id.* at pp. 161-62. As another officer approached, Officer Cross approached Petitioner and brought him to the ground and handcuffed him. *Id.* at p. 162.

Officer Cross secured the gun as evidence, which he discovered was a BB gun. *Id.* The BB gun was unloaded and did not have a CO2 cartridge. *Id.* at p. 174. Officer Cross also secured several pairs of men's socks from Petitioner's pants and that had fallen out of his pants. *Id.* at pp. 166-67. While Petitioner was in custody by Officer Cross's patrol car he stated, "I have a drug problem. I need help. This is the only way I could get help. I got the gun earlier today and brought it with me. I did not take the gun out." *Id.* at p. 168. A crack pipe was recovered from Petitioner's person. *Id.* at p. 175. Officer Cross stated based on his experience that it was possible that Petitioner was either high or coming down from a high. *Id.* at pp. 175-76. Officer Cross also stated that Petitioner appeared to be able to follow his directions and understand what he was saying. *Id.* at pp. 178-79.

Petitioner's counsel did not present any evidence and the proof was closed. *Id.* at p. 182. The jury returned a verdict of guilty on both Robbery in the Second Degree and Criminal Possession of a Weapon in the Third Degree. *Id.* at pp. 234-35. Prior to sentencing, Petitioner, through different counsel, moved to set aside the verdict pursuant to CPL § 330.30, asserting that he was denied effective assistance of counsel. State Court Records, Part 1, at pp. SR 104-112. On March 19, 2010, the court denied the § 330.30 motion and sentenced Petitioner to ten years, with three years of post-release supervision, on the Robbery charge, and a concurrent one to three year term on the Weapon charge. Tr. (Mar. 19, 2010). The court took into account Petitioner's lengthy criminal history. *Id.* at pp. 11-12.

### B. Direct Appeals

Petitioner's Appellate Attorney, Raymond White, filed a brief with the Appellate Division, Third Department, dated March 7, 2011, in which he raised the following contentions: (1) the grand jury proceedings were defective because the prosecutor failed to charge the grand jury that Petitioner's intoxication could negate his intent to commit the alleged crimes; (2) the grand jury proceedings were defective because the prosecutor failed to charge the grand jury with lesser included offenses; (3) the grand jury proceedings were defective because the indictment was not supported by legally sufficient evidence; (4) the trial court erred in failing to charge the jury with lesser included offenses; (5) the trial court's intoxication charge was incorrect; (6) the trial court erred in refusing to allow Petitioner to proceed *pro se*; (7) the trial court erred in allowing the prosecution to inquire into Petitioner's prior petit larceny charge; (8) the trial court violated Petitioner's Due Process rights by discouraging jurors from taking notes; (9) the verdict was against the weight of the evidence; (10) Petitioner's sentence was "harsh and excessive"; (11) Petitioner

received ineffective assistance of counsel; (12) the trial court improperly restricted the scope of *voir dire*. State Court Records, Part 1, at pp. SR 17-18.

On July 21, 2011, the Appellate Division, Third Department, affirmed Petitioner's judgment of conviction. *People v. Wimberly*, 927 N.Y.S.2d 229 (App. Div. 2011); Dkt. No. 12-5, State Court Records, Part 4, at pp. SR 681-85. The Third Department found: (1) Petitioner's challenge to the sufficiency of the evidence presented to the grand jury was precluded by his failure to challenge the sufficiency of the trial evidence; (2) the trial court properly instructed the jury; (3) there was no evidence before the grand jury requiring the prosecutor to present an intoxication charge; (4) any error in the charges given to the grand jury was harmless because the proper charges were given to the trial jury; (5) the trial court's ruling at the *Sandoval* hearing was not an abuse of discretion; (6) the trial court did not err in refusing to allow Petitioner to proceed *pro se*; (7) the verdict was not against the weight of the evidence; (8) the sentence was not harsh or excessive; and (9) the Petitioner's remaining contentions were not preserved for review. *Id.*

On August 17, 2011, Petitioner's Appellate Attorney submitted an Application for leave to appeal to the New York State Court of Appeals on the following grounds: (1) improper charges were given to the grand jury and the trial jury; (2) the trial court erred in refusing to allow Petitioner to proceed *pro se*; (3) Petitioner's counsel was ineffective in failing to seek suppression of evidence seized from Petitioner or of the identification of Petitioner at the scene of the arrest; (4) the trial court improperly discouraged jurors from taking notes; and (5) the trial court improperly restricted the scope of *voir dire*. *Id.* at pp. SR 686-87. The Court of Appeals denied Petitioner leave to appeal on December 6, 2011. *People v. Wimberly*, 18 N.Y.3d 863 (2011); *Id.* at p. SR 688.

### C. Collateral Appeals

#### 1. *Petitioner's First Article 440 Motion*

On March 12, 2013, Petitioner, proceeding *pro se*, filed a motion to vacate the judgment and set aside his sentence pursuant to CPL Article 440. State Court Records, Part 4, at pp. SR 689-90. In his motion, Petitioner argued that the indictment was not supported by sufficient evidence and was improperly amended. *Id.* at pp. SR 692-93. Petitioner claimed that he received ineffective assistance of counsel due to the failure of his attorney to object to the indictment and the amendment thereof, his failure to request lesser included offenses, and his failure to make various objections at trial. *Id.* at pp. SR 694-96. Petitioner also claimed that his counsel who filed the CPL § 330.30 motion was ineffective in failing to raise the issue of lesser included offenses. *Id.* at pp. SR 696.

On March 25, 2013, the Albany County Court Judge denied Petitioner's motion because each of issues raised in the motion either had been raised, or could have been raised, on appeal. *Id.* at pp. SR 702-05. The County Court Judge therefore held that each of the claims was procedurally barred under CPL § 440.10(2)(a) & (c). *Id.* at p. SR 704. Petitioner appealed the County Court's decision to the Appellate Division, Third Department, on April 4, 2013. *Id.* at pp. SR 706-30. The Third Department denied leave to appeal on June 11, 2013. *Id.* at p. SR 731.

#### 2. *Petitioner's Second Article 440 Motion*

On August 13, 2014, Petitioner filed a second Article 440 motion, seeking to vacate the judgment. State Court Records, Part 4, at pp. SR 733-38. In this motion, Petitioner argued: (1) he was denied the right to a preliminary hearing; (2) he was denied the right to testify before the grand jury; (3) his trial counsel was ineffective due to his failure to secure his rights to a preliminary hearing and to testify before the grand jury, as well as his failure to seek dismissal based on the

insufficiency of the evidence; and (4) the prosecutor procured the judgement by fraud and misrepresentation. *See id.* at pp. SR 743-61. On September 29, 2014, the Albany County Court denied Petitioner's motion again on the ground that each of the issues raised either had been raised or could have been raised on appeal, and the claims were therefore barred under CPL § 440.10(2)(a) & (c). *Id.* at pp. SR 792-96. Petitioner appealed the County Court's decision to the Appellate Division, Third Department, which denied leave to appeal on December 10, 2014. *Id.* at pp. SR 779-800.

## II. STATUTE OF LIMITATIONS UNDER AEDPA

Respondent argues that the Petition should be dismissed as untimely under 28 U.S.C. § 2244(d)(1)(A). Dkt. No. 12-1, Resp.'s Mem. of Law at pp. 9-11. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal *habeas* petitions challenging a judgment of a state court are subject to a one-year statute of limitations. 28 U.S.C. § 2244(d). As relevant in this case, 28 U.S.C. § 2244(d)(1)(A) provides that "[t]he limitation period shall run from . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." A judgment of conviction becomes final at the conclusion "of direct appellate review of the state court system and either the completion of the certiorari proceedings in the United States Supreme Court, or—if the prisoner elects not to file a petition for certiorari—the time to seek direct review via certiorari has expired." *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001); *see also* Rule 13, Rules of the Supreme Court of the United States. The one-year limitations period is tolled during the pendency of a "properly filed application for State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2). However, AEDPA's tolling provision does not operate so as to restart the one-year limitations period at the conclusion of the state court

proceedings. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000).

Here, because Petitioner did not seek *certiorari*, his conviction became final ninety days from the date on which the New York Court of Appeals denied leave to appeal, December 6, 2011; thus, the limitations period began to run on March 5, 2012. The one-year limitation period therefore ran from March 5, 2012 to March 5, 2013. Petitioner did not file his Petition until December 22, 2014. *See* Pet.[5] Although AEDPA's limitations period may be tolled while a "properly filed application for State post-conviction or other collateral review" is pending, none of Petitioner's post-conviction filings were pending during the limitations period. First, Petitioner's CPL § 330.30 motion was denied by the trial court on March 19, 2010, before the statute of limitations began to run on March 5, 2012. *See Vasquez v. Martuscello*, 2011 WL 6740556, at *3 (E.D.N.Y. Dec. 22, 2011) ("[A] state court application that is decided well before the statute of limitations begins to run does not toll the statute of limitations." (citing *Lozada v. Cripps*, 2010 WL 7113583, at *5 (S.D.N.Y. Dec. 17, 2010)). Second, neither of Petitioner's two motions to vacate the judgment filed pursuant to CPL Article 440 tolled the limitations period because they were both filed *after* the limitations period had already expired. Petitioner's first Article 440 motion was filed on March 12, 2013, and his second was filed on August 13, 2014.[6] "The tolling provision does not . . . 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid

---

[5] Under the prison mailbox rule, a *pro se* prisoner's *habeas* petition is deemed filed the date it is delivered to prison authorities for forwarding to the district court. *See Fernandez v. Artuz*, 402 F.3d 111, 113 (2d Cir. 2005) ("Many circuits, including this one, have applied the prison mailbox rule in a variety of contexts, most notably to fix the date on which a federal habeas petition is filed." (citing *Adeline v. Stinson*, 206 F.3d 249, 251 n.1 (2d Cir. 2000)) (footnote omitted).

[6] The Second Circuit has held that the prison mailbox rule applies to determine the filing date for state post-conviction and collateral motions. *Fernandez v. Artuz*, 402 F.3d at 116.

a statute of limitations." *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998); *see also Doe v. Menefee*, 391 F.3d 147, 154 (2d Cir. 2004) (stating that Article 440 motion filed after AEDPA limitations period expired did not renew the limitations period under 28 U.S.C. § 2244(d)(2)). Thus, the Petition is untimely, absent another basis to overlook its untimeliness.

The Supreme Court has held that § 2244(d) is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 649 (2010). In order to be entitled to equitable tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Id.* Equitable tolling is reserved for "rare and exceptional circumstances." *Doe v. Menefee*, 391 F.3d at 159. Here, Petitioner has not identified any "extraordinary circumstance" that prevented him from timely filing his Petition; instead, Petitioner aks the Court to consider his Petition in the "interest of justice" and due to his lack of legal knowledge. Pet. at ¶ 18. Ignorance of the law does not constitute an "extraordinary circumstance" warranting equitable tolling. *See, e.g.*, *Phillips v. Lavalley*, 2012 WL 443856, at *10 (W.D.N.Y. Feb. 10, 2012); *Wilson v. Bennett*, 188 F. Supp. 2d 347, 354 (S.D.N.Y. 2002); *Fennell v. Artuz*, 14 F. Supp. 2d 374, 377 (S.D.N.Y. 1998). Because Petitioner has not identified any extraordinary circumstance that prevented him, despite due diligence, from filing his Petition prior to December 22, 2014, the Court recommends that equitable tolling not be extended to Petitioner in this case.

The Supreme Court has also held that a petitioner who makes a credible showing of "actual innocence" may obtain review of time-barred petition. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). "[A] claim of innocence must be both 'credible' and 'compelling.'" *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012). A claim is "credible" where it is supported by "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). A claim is "compelling" where it is "more likely than not, in light of the new evidence, [that] no reasonable juror would find [the petitioner] guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006). "The standard . . . requires reviewing courts to 'consider all the evidence, old and new, incriminating and exculpatory,' and, viewing the record as a whole, to 'make a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Rivas v. Fischer*, 687 F.3d at 542. The "standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. at 538. "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *McQuiggin v. Perkins*, 133 S. Ct. at 1936 (quoting *Schlup v. Delo*, 513 U.S. at 316)).

Here, Petitioner asserts he is actually innocent because no reasonable juror could have found that he committed all the elements of Second Degree Robbery beyond a reasonable doubt. Dkt. No. 13, Pet'r's Traverse. However, Petitioner has not presented any new evidence of his innocence; Petitioner's claim is essentially that his conviction was against the weight of the evidence. Therefore, Petitioner has failed to set forth a credible claim of actual innocence that would warrant consideration of his Petition despite the expiration of the statute of limitations. *McQuiggin v. Perkins*, 133 S. Ct. at 1928; *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002).

Accordingly, the Court recommends that the Petition be **denied and dismissed** as time-barred under 28 U.S.C. § 2244(d)(1)(A).

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED** and **DISMISSED** as untimely under 28 U.S.C. § 2244(d); and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2).[7] Any further request for a COA must be addressed to the Court of Appeals (FED. R. APP. P. 22(b)); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: December 9, 2016
Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[7] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation").